

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GINO'S EAST SERVICES, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 4808 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| FRANCESCO INSERRA, et al., | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion by Plaintiff, Gino's East Services LLC, seeking to enforce an oral settlement agreement and requesting an award of attorneys' fees and costs against Defendants, Francesco Inserra and Gino's Pizzaria, Ltd. The Court rules on this motion in connection with Judge St. Eve's referral of the case for settlement discussions pursuant to Local Rule 72.1. After the motion was fully briefed, the Court heard oral arguments from both parties and met with the parties twice *in camera* to discuss a negotiated resolution. When these efforts proved unsuccessful, the parties agreed to have the Court resolve the instant motion on the papers and the previous oral arguments. For the reasons that follow, Plaintiff's motion to enforce the alleged settlement agreement is denied.

### I. Background

The Court provides a brief sketch of the factual background of the case in order to provide context for its decision on the disputed settlement agreement. This case centers on a trademark dispute between Plaintiff and Defendant over the use of the name "Gino's" in

conjunction with the sale of pizza in the greater Chicagoland area. The seed of the instant dispute was planted in Chicago in the 1950s, when a successful family pizza restaurant called Gino's flourished on Rush Street. After several years, family conflicts made it impossible for the founders of Gino's to continue working together. In 1966, one branch of the family left the original Gino's and established a pizzeria several blocks to the east under the name "Gino's East." Over the ensuing decades, Gino's East (hereinafter "Plaintiff") expanded to thirteen locations throughout the Chicago region and began selling its products in grocery stores. In the course of its business operations, Plaintiff registered various trademarks relating to the Gino's East name. In the meantime, the other branch of the family continued to operate a Gino's restaurant—Gino's Pizzaria [sic]—in the original Rush Street location. Plaintiff filed this lawsuit after it learned that Defendant was opening a pizza restaurant in a new location on Fullerton Avenue in Chicago, alleging that Defendant was using, or intending to use, marks that were deceptively similar to Plaintiff's registered trademarks in connection with the Fullerton Avenue restaurant.

Judge St. Eve referred the case to this Court for the purpose of holding a settlement conference. The first settlement conference was held on November 6, 2007. The facts recited here are an amalgam of facts on the record and the Court's own recollection of events that occurred in chambers. The major themes of the November 6 settlement conference were Plaintiff's insistence on preserving the value of the Gino's East mark and Defendant's insistence that it was merely using the same name it had used continuously on Rush Street since the restaurants were founded decades earlier. In order to facilitate settlement, the Court suggested to Plaintiff that it consider allowing Defendant to use the exact signage it had been using at its Rush Street location, namely "GINO'S ON RUSH." Defendant had reservations based on the possible

confusion that could result from naming a restaurant located on Fullerton Avenue "GINO'S ON RUSH." Nonetheless, the parties agreed to consider the suggestion and reconvene the following week.

The parties and the Court reconvened on November 15, 2007, and the parties appeared to be relatively satisfied with the general concept of "GINO'S ON RUSH" as the name for the Fullerton Avenue restaurant. As Plaintiff's brief indicates, the parties had reached agreement on major points of a settlement. The crux of the settlement was an agreement that Defendant would use the name "GINO'S ON RUSH" on all restaurant signage and other materials, such as menus and advertising. In exchange, Plaintiff would dismiss the case and pay for a portion of the costs associated with Defendant's name change, including the costs of a new sign and new menus. Finally, the parties agreed to standard non-disparagement and non-harassment clauses. The parties agreed that attorneys for both sides would remain in contact in order to discuss the precise details of the agreement and that they would eventually reduce the agreement to a writing, pursuant to which the parties would agree to dismiss the case.

After the November 15, 2007, settlement conference, the parties appeared for a status hearing before Judge St. Eve on November 26. At that hearing Mr. Rosenwein, counsel for Defendant, stated: "We met with Judge Ashman, and we have a tentative agreement on a settlement." (Pl.'s Mot., Ex. D.) During this time (late November), counsel for Plaintiff and Defendant were exchanging communications and drafts of proposed terms and agreements. On December 17, 2007, the parties appeared before this Court for a status hearing, and the following colloquy took place:

> The Court: When you were last here, you indicated you had a tentative
> settlement. You were exchanging documentation. Where do things stand?
>
> Mr. Rosenwein: That's correct, your honor. We have not finalized the
> agreement at this point. My client is reviewing the settlement agreement
> that has been proffered, and we hope to be able to resolve this fairly
> shortly.

(Pl.'s Mot., Ex. G.)

Things appeared to be progressing smoothly until January 8, 2008, when Defendant responded to Plaintiff's draft of a proposed settlement agreement with a number of substantive changes, including alterations to the name that Defendant would be allowed to use, changes in the non-interference and non-disparagement clauses, and modifications of the language addressing the procedure for determining Plaintiff's contribution to the cost of changing Defendant's signs and other materials. As Plaintiff's brief states, these changes truly did go to "the heart of the parties' [alleged] agreement." (Pl.'s Br. at 7.) When Defendant refused to accede to Plaintiff's preferred terms, Plaintiff filed the instant motion to enforce what it maintains was an oral settlement agreement that was formed during the November 15 settlement conference.

## II. Discussion

Each party correctly states the applicable law. As Plaintiff notes, "there is a general policy favoring enforcement of settlement agreements," *Foster v. Nat'l City Bank*, No. 05 C 6992, 2007 WL 1655250, at *3 (N.D. Ill. June 6, 2007), and oral settlement agreements reached during court-mediated conferences are enforceable under Illinois law. *See Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002). Furthermore, under Illinois law, the Statute of Frauds is not a defense to the enforcement of an oral agreement when that agreement was reached during a

court-ordered settlement conference before a judge. *LoCasto v. LoCasto*, 518 F. Supp. 2d 1025, 1030 (N.D. Ill. 2007). At the same time, Illinois law provides that an oral settlement agreement will only be enforced if "there is clearly an offer and acceptance . . . and a meeting of the minds as to the terms of the agreement." *Wilson v. Wilson*, 46 F.3d 660, 666 (7th Cir. 1995) (quoting *Brewer v. Nat'l R.R. Corp.*, 256 Ill. App. 3d 1083, 1088, 628 N.E.2d 331, 335 (1993)). Because an enforcing court must be able to "ascertain the parties' agreement," *LoCasto*, 518 F. Supp. 2d at 1028, an oral settlement agreement is only enforceable when the parties' conduct evinces a meeting of the minds, *id.*, and the agreement is "so definite with respect to its material terms that the promises and performances to be rendered by each party are reasonably certain." *Pritchett v. Asbestos Claims Mgmt. Corp.*, 332 Ill. App. 3d 890, 896, 773 N.E.2d 1277, 1282 (2002). While the terms of a settlement agreement reached in chambers do not necessarily have to be made part of an official record to be enforceable, *Lynch*, 279 F.3d at 490-91, the material terms of the agreement must be definite and firm, not a mere "settlement framework" or "agreement to agree." *See IMI Norgren, Inc. v. D&D Tooling Mfg., Inc.*, 306 F. Supp. 2d 796, 799 (N.D. Ill. 2004).

Applying these well-established principles to the facts of this case, the Court finds that the parties did not reach an oral settlement agreement at the November 15, 2007, settlement conference. Several factors lead to this conclusion. First, the Court looks to the post-settlement conference conduct of the parties. At two separate status hearings before this Court and Judge St. Eve, the agreement between the parties was characterized as "tentative." (Pl.'s Mot., Ex. D and G.) In an e-mail to Plaintiff's counsel on November 27, 2007, Defendant's attorney wrote "I suggest we make sure we have an agreement before my client starts getting bids," and suggested a mechanism for determining the amount Plaintiff would pay towards Defendant's new "menus,

-5-

banners, neon sign, etc." (*Id.*, Ex. C.) This email followed a status hearing before Judge St. Eve during which Plaintiff's counsel proposed keeping the case pending because "[t]here are a few details that have yet to be worked out." (*Id.*, Ex. D.) These actions in the weeks following what Plaintiff alleges was a final resolution of the case suggest that, although a framework existed, a complete settlement agreement was not in place.

This impression is strengthened when the Court considers what elements of the agreement were actually in place at the time of the November 15, 2007, settlement conference. Two crucial terms remained fatally ambiguous. First, the parties agreed that Defendant would be allowed to continue using the name "GINO'S ON RUSH." This is a seemingly simple agreement. However, the devil was in the details, as further discussions between the parties and the Court have revealed considerable disagreement over how the agreed-upon words were to be displayed, including, for example, the appropriate ratio between the size of the large "G" in "GINO'S" and the letters that would spell out "ON RUSH." Because the heart of this case is the potential for confusion between the trademarks of the rival pizzerias, the exact appearance of the sign was a significant material issue that continued to be discussed for months after the settlement conference. Similar in its deceptive simplicity was the parties' agreement that Plaintiff would pay for a portion of the costs of converting Defendant's "signage" to "GINO'S ON RUSH." As is evident from Mr. Rosenwein's November 27 e-mail, "signage" can include not only "signs" but also menus, banners, and other paraphernalia. With respect to signage, therefore, the scope of the alleged settlement agreement was unclear. Also absent was an agreement on the percentage of Defendant's costs to be paid by Plaintiff and a methodology for determining the relevant costs. Given that the new name and compensation for the signage are two of the four terms Plaintiff

claims the parties agreed on, the performances owed by each party are far from "reasonably certain," as they must be in order for the Court to find an enforceable agreement.

Finally, the Court notes that there was no statement on the record that the case had been settled. Although this is not an absolute legal requirement, the absence of such a statement is significant. As a rule, when this Court concludes a successful conference that results in an oral agreement to settle, the Court will make a statement on the record indicating that an agreement has been reached and that the Court will enforce the oral settlement agreement. The fact that the Court did not do so in this case indicates that the Court did not believe the case had been settled at the time of the November 15 settlement conference. The Court finds, in light of the totality of the circumstances, that the parties had a tentative agreement or settlement framework, but did not form an enforceable contract during the November 15 settlement conference.

The Court understands Plaintiff's frustration. Defendant's ultimate counter-offer of January 8, 2008, does not merely express a different view on terms that the Court has found were never fully resolved, such as the lettering of the new signage and the allocation of the costs of new signs, menus, banners, and so forth. Rather, Defendant's January 8 proposal contains a rejection of the previously-accepted "GINO'S ON RUSH" name and retracts Defendant's own proposal for allocating signage costs. These surprising changes of heart could support an inference that Defendant was not negotiating in good faith and was more interested in buying time through contumacious conduct than reaching a resolution. But just as there is a recognized interest in enforcing oral settlement agreements, *Foster*, 2007 WL 1655250, at *3, the interests of justice and efficiency are also served when parties have the flexibility to explore frameworks for resolving their disputes without unintentionally binding themselves to a tentative solution. In this case, the

parties never reached an agreement that was sufficiently specific as to its material terms to be enforced by this Court. Therefore, Plaintiff's motion to enforce the settlement agreement and request for costs and attorneys' fees are denied.

### III. Conclusion

For the reasons set forth above, Plaintiff's motion to enforce the alleged settlement agreement and request for costs and attorneys' fees are denied.

**ENTER ORDER:**

                                            **MARTIN C. ASHMAN**
Dated: May 15, 2008.                    United States Magistrate Judge